### GENERAL ELECTRIC CO. v. DUNCAN ELECTRIC MFG. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1908.)

No. 1,397.

PATENTS—INFRINGEMENT—ELECTRIC METERS.

The Duncan patent, No. 604,465, for an electric meter, the invention relating to means for counterbalancing or compensating for the friction which opposes the rotation of the armature in an integrating watt-meter, which consists of one or more adjustable coils, is not infringed by the device of the Duncan patent, No. 752,048, in which electrical instead of mechanical means are used to accomplish the same purpose; the coils being stationary.

Appeal from the Circuit Court of the United States for the District of Indiana.

The decree from which this appeal is brought dismisses the bill filed by the complainant appellant, upon final hearing, for want of equity. Infringement of letters patent No. 604,465 is charged by the bill against the defendants appellees, and this patent is one of three several letters patent whereof infringement was adjudged against the same defendants in a prior suit, reported as Siemens-Halske Electric Co. v. Duncan Electric Mfg. Co., 142 Fed. 157, 73 C. C. A. 375; the present complainant having acquired title to such patent from Siemens-Halske Electric Company. In the case at bar the defendants are alike estopped from disputing the validity of the patent or scope of the claims within the fair import of their terms, as therein adjudicated, and the decree rests on the finding of noninfringement, with the issue thus narrowed. The present device of the defendants, however, alleged to be an infringement, was adopted and used after the commencement of the former litigation and not involved therein. It also appears that the defendant Duncan obtained a patent therefor, No. 752,048, issued February 16, 1904.

Patent No. 604,465, in suit, was issued to the defendant Duncan May 24, 1898. As stated in the specification, the "invention relates to improvements in electric meters, particularly that class known as 'integrating watt-meters' of the motor type." As described in the appellant's brief, the invention "relates to means for counterbalancing or compensating for the friction which opposes the rotation of the armature of an electric meter. This friction varies under different conditions, and the invention of the patent in suit consists in the employment of an adjustable compensating coil for counteracting or compensating for such friction, whereby the varying degrees of such friction at different times may be taken care of and the 'balance' of the meter maintained."

The introduction of "an adjustable compensating coil," namely, adjustable in relation to the armature, for the purpose referred to, instead of the pre-existing compensating coil which was in fixed position and "not variable in character," constitutes the single feature and means of novelty and invention in this class of so-called "integrating watt-meters."

Other specifications and facts involved in the inquiry are mentioned in the opinion, and the following are the claims in the patent whereof infringement is alleged:

"3. The hereinbefore-described method of securing a variable compensation for the increased friction incident to use in an electric meter, consisting in accelerating the rotation of the armature by the influence of one or more adjustable compensating coils arranged in co-operative relation therewith."

"6. In an electric meter adjustable compensating coils, 24, mounted as

shown in inductive relation to the rotary armature and adapted to compensate for the increased friction incident to use, substantially as described.

"7. In a motor-meter the combination of a series field carrying the main current, a revoluble armature in inductive relation to said field, and an adjustable compensating coil or coils in co-operative relation to said armature for the purpose specified."

The defendants' substitute device is a compensating (or shunt) coil, fixed in position and not adjustable to or from the armature, provided with means (described in Duncan's subsequent patent No. 752,048) for varying the effect by switching into circuit additional "turns" of the coil. This means consists of electrical connections terminating in contact points arranged in the form of an arc and stationary, and a switch arm so mounted in circuit that its tip engages the contact points in turn as required. Thus the number of coils energized by the current is increased or diminished by turning the switch arm.

Edward Rector and Drury W. Cooper, for appellant.

Robert H. Parkinson, for appellees.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The question of infringement or noninfringement involved in this appeal is within narrow compass. Its solution hinges alone on the fair interpretation of the claims in suit, as allowed in patent No. 604,465, for the means there described, "for counterbalancing or compensating for the friction which opposes the rotation of the armature of an electric meter." This means is expressly defined, in specification and claims, as "an adjustable compensating coil or coils" in co-operative relation to the armature, with adjustability for such co-operation conceded to be the single feature of novelty; the compensating coil (or shunt coil) in fixed position in electric meters being well known and so recognized in the specification. As therein stated, this adjustability of the coil provided "a simple and efficient means for compensating for the increased friction caused by the wear and continued use of the working parts of the meter," and the sole means shown or claimed as invention was the provision for "bodily movement" of the coil towards and from the armature, to vary its influence and maintain the "balance" of the meter.

The defendants' meter employs means for like purpose, but retains the compensating or shunt coil of the prior art in fixed position, incapable of this mechanical or bodily movement of the patent device, and then provides electrical connections from sections of the coil to stationary central points, with an electrical switch to make the desired contact, "thus causing the current to flow through a greater or smaller number of turns of the wire constituting the coil," whereby its effect upon the armature is varied. Identity in the general purpose and result of compensating for friction is obvious in both devices, although various distinctions are claimed on behalf of the defendants, of advantage and disadvantage in such means respectively. The defendants' means, however, for such effect, is a departure, as we believe, from any idea of invention disclosed or taught by the patent—with the limited scope undeniably imposed by its recitals and terms. As stated by one of the experts:

"The patented method of adjustment is purely a mechanical movement of the coil, the means for effecting it being merely a mechanical agent for

changing the position of the coil, while no electrical change is made in the strength or path of the current through the coil. On the contrary, defendants' meter employs a principle, method, and means that are purely electrical, no movement of the coil being provided for or even possible."

In other words, the conception of the patentee for the improved means was to move and adjust the coil for the well-known effect of proximity upon the armature, with no change of current, while the other device adopts electrical connections to vary the length of path of that current through the coil—giving more or less "turns to the coil"— for like result.

The contention for infringement in this change of means and method is this: That the one is a well-known equivalent of the other, in the electrical art, for producing a variable effect; that the substitute means of the defendants to that end "is in fact and in substance an 'adjustable' coil," in the "nomenclature of the art" and within the meaning of the claims; that ordinary skill only was required to make the substitution; and that the general doctrine of equivalents is applicable to such substitute. We are of opinion, however, that neither of these propositions is tenable, under the plain disclaimers and limitations of invention for which monopoly was granted in this patent.

The specification describes the "improved means for compensating for the increased friction of the meter resulting from use" as consisting "of two compensating coils" located over the armature, and "firmly held in position out of contact with the armature by means of" clamps, with arms which "firmly embrace said coils"; also, provisions for adjustability. It then states:

"As these compensating coils may be variously adjusted toward or away from the armature and can be employed in meters having field-coils of different forms, I do not hereby limit myself to any of the specific forms or relative arrangements herein shown."

The following statements then appear:

"One of the principal features of my invention is the means I employ to make the meter reliably operative on small currents or small amounts of energy and to compensate for the increase of friction incident to continued service. For example, when a meter is first calibrated it possesses a certain amount of friction. which has in some meters been temporarily compensated for by supplementing the series field with a shunt-coil, thereby producing an auxiliary starting-field, which however, is not variable in character. The result is that after the meter has been in use for some months the friction of the moving parts in most cases will have so increased that from five to ten times as much energy is required to start it as when first calibrated.

"Another objection to the employment of a stationary shunt-coil in the present meters is the fact that any changes made in it, such as adding more turns to it, simply adds resistance into the armature-circuit, which results in possibly compensating for friction, but lowers the registry or characteristic on all the other loads. Placing the said supplement shunt-coil inside of the series coil is also objectionable, as it thus becomes a secondary to the series coil on alternating currents, thereby setting up a counter electromotive force in opposition to that of the mains. This counter effect increases as the current through the series coils increases, whereby its tendency to overcome friction decreases as the energy of the current through the meter increases instead of remaining constant.

"My improved means for overcoming the above objections is by employing one or more, preferably two, compensating coils, 24, located immediately above the armature. These compensating coils are connected in series

with the armature and a suitable resistance, 25. In calibrating the meter these compensating coils are simply moved laterally or vertically by means of the screw, 30, until the friction is overcome, whereupon a small amount of energy through the meter will operate it."

Thus it is conceded that shunt-coils have been used in meters to compensate for friction and made more or less variable in effect by other means, with express mention of "the stationary shunt-coil" as objectionable, because "changes made in it, such as adding more turns to it, simply adds resistance into the armature circuit, which results in possibly compensating for friction, but lowers the registry or characteristic on all the other loads." The only invention claimed or suggested was the introduction of means to make the coil adjustable instead of stationary, "for overcoming the above objections." Were it assumed therefore that the expedient adopted by the defendants, of "adding more turns" to the stationary coil, would otherwise appear, in any sense, within the contemplation of the invention and scope of the grant, it was not only disclaimed by this reference, but its exclusion, under the careful specifications of the improvement in means claimed and allowed is unmistakable, as we believe. That the effect obtained in improved compensation was not patentable is well settled, and the limitation to the means devised therefor is well recognized in these specifications, if not in the construction sought on this appeal. The disclaimer is binding, whatever the prior state of the art, either in fact or as viewed by the patentee, and no interpretation of the claims is authorized to charge the defendants with infringement for use of the stationary coil and electrical connections for equivalent function.

The alleged inconsistency between the present contentions of the appellant for construction of the patent and the construction urged and allowed in the prior litigation referred to do not require consideration, and the decree appealed from is affirmed.